The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Raylene D. Grisho presiding. Thank you. We'll call case number 4-25-0510 in re. Estate of Arthur H. Riekena, deceased. With W.C. Brooks III as the petitioner versus Dennis M. Rekina as respondent and the appellee. With counsel for the appellant. Sorry, please state your name for the record. Good afternoon, everyone. My name is Mitch Gilfillan and I represent the petitioner appellant W.C. Brooks III. Thank you. And counsel for the appellee, would you announce your name for the record, please? Thank you, Your Honor. Attorney David West on behalf of the executor Dennis Riekena of the estate of Arthur Riekena. Riekena, thank you. We weren't sure how to say that. It's a tricky name. Yes. Counsel for the appellant, you may proceed. Thank you. May it please the court. As I introduced myself, my name is Mitch Gilfillan, here today to represent W.C. Brooks, the petitioner appellant. Counsel, Mr. West, best of luck to you, sir. So this court is aware this appeal presents a narrow but fundamental question of Illinois property and contract law, whether importantly, whether a later executed, legally deficient and unexercised right of first refusal may extinguish or essentially eliminate a prior recorded exclusive option to purchase real property. The answer under Illinois settled law, we believe is no. I will address four to five main points depending on time. I would respectfully ask the court for a brief rebuttal time after Mr. West gives his argument. First, the option agreement was first in time and first in right. On November 2nd, 2018, Arthur Riekena executed a signed, notarized and recorded option receipt agreement granting my client, Walter Brooks, an exclusive and irrevocable right to purchase adjacent parcels of farmland identified by full legal description, and that'll be important here shortly. The option encompassed the entirety of the parcels, including tillable acreage, non-tillable land, wooded areas and other features and improvements. Importantly for this court, that option was supported by consideration recorded against the property and remains an encumbrance to this day. Illinois law treats a purchase option not as a casual expression of intent, but as a present conveyance of enforceable rights. Once granted, as done in this case, an option vests in the option holder, my client, the power to compel the sale of the property upon exercise. It is therefore a completed transaction as to purchase rights, even though the deed transfers later. Now, critically, the deceased, Arthur Riekena, granted this option before any right of first refusal ever existed, and a lot of this case comes down to that exact point, timing. 11 days later, on November 13, 2018, Arthur Riekena, now deceased, entered into a farm lease with his nephew, Dennis Riekena, Mr. West's client. That lease applied only to a count of tillable acreage and included a specific sentence, and I want to highlight. Quote, in the event landlord decides to sell all or a portion of tenants has rights of first refusal, period, close quote. The lease does not reference the option, which my client already had, does not identify the parcels by any legal description whatsoever, and does not purport to revoke or subordinate previously conveyed purchase rights in Mr. Brook's name. As a matter of law, Arthur's decision to sell occurred when he executed the option prior to the right of first refusal being entered. A later document cannot retroactively undo his decision. If the trial court's ruling is affirmed, it would destabilize every recorded purchase option in Illinois, essentially undoing all options to purchase land. A seller for a third party could defeat an option simply by later assessing or inserting himself into a vague right separate agreement, even without identifying the property or any legal description whatsoever. That result is incompatible with Illinois precedent, recognizing that options may force the sale of real property and are enforceable according to their terms. The second point I want to make is the plain language of the lease confirms the right of first refusal cannot apply retroactively. Earlier, I put it in quotes that even setting a priority aside, the lease's own language forecloses the estate's theory and argument. The right of first refusal is triggered only, quote, in the event landlord decides to sell, close quote. Language that is prospective and conditional on future events happening. It does not purport to govern past decisions, nor does it attempt to capture property already burdened by a recorded option, which my client has and still has to this day. Nothing in the option agreement reserves room for a later right of first refusal. Nothing in the lease states that it applies notwithstanding prior conveyances of purchase rights. The estate's argument is flawed, and it's flawed because the argument asked this court to read into the lease language that simply is not there. We are here and we want to decide the case on the law and the merits, not speculation. Third, the right of first refusal is legally deficient and personal and terminated upon Arthur Rickenau's death. Independently, the right of first refusal fails as a matter of contract law. It contains no price term, no valuation method, and no duration whatsoever. It's general and generic in nature. Illinois courts have repeatedly held that such provisions are unenforceable. We've cited various cases such as Folsom v. Harr, which rejects right of first refusal lacking a method-determined price. Universal Scrap Metals confirms that merely using the phrase, quote, right of first refusal does not supply missing terms. And last, the Kellner v. Bartman holds that while duration is omitted, a right of first refusal is personal and terminates upon the death of either party, which did happen in this case. Here, Arthur Rickenau, the landlord and grantor of the right of first refusal to his nephew, is deceased now. The trial court acknowledged that the right of first refusal would terminate upon Dennis's death, but failed to apply the same rule to Arthur. Despite Kellner, the case law I cited making clear that the right is personal to both parties. Fourth argument, the right of first refusal was never exercised and the issue was not right. Even assuming, for argument's sake, that the right of first refusal was valid, which is not in this case, dismissal was procedurally improper because the right of first refusal was never executed. That is a very key point I'm asking this court to take into consideration. Neither the estate nor Dennis ever alleged an intent to purchase the property, not at any point. There was no notice of exercise, there was no tender of performance, there was no financing efforts, no loan documents, and no attempt to buy the land whatsoever. The right of first refusal was raised more than 18 months into this litigation as a purely, what we believe, a defense theory to basically bolster their arguments. Illinois law does not permit dismissal of an option based on a hypothetical future exercise of a right of first refusal. Until the right of first refusal holder actually elects to purchase, there is no controversy in this case. It hasn't happened yet. Sadly for us, the trial court dismissed this without even going through one ounce of discovery in this case that a live recorded option based on speculation, particularly problematic, where Dennis, as in here, already enjoys a lifetime right to farm the land. That's still a given for him, not for my client. Fifth and final, the record demonstrates interference and fiduciary overreach in this matter. Let me break this down. Taking the pleadings and the affidavits as true, including the affidavit of Crystal, who actually witnessed Dennis, the nephew, arguing with his uncle, why should I have to buy my own inheritance? Taking all that is true, as required by the motion to dismiss stage, the record demonstrates repeated interferences by Dennis Rickenau with Arthur's express intent to sell property to Walter Books. What does that mean? Let me break it down. Dennis's own words, and I quote, I don't know why I have to buy my own inheritance, close quote, reveals a mistaken belief that the property already belonged to him when that was never even the intention at that point. That belief drove pressure on Arthur, his older elderly uncle, to abandon an earlier sale to Mr. Brooks and substitute Dennis as the buyer, despite Dennis ultimately never purchasing the property. This is direct interference and it occurred while Dennis held power of attorney over Arthur. That should raise alarms all over this court that someone that had power of attorney over somebody is now basically inserting themselves into ownership of land. What proof do you have that he affirmatively inserted himself other than he was named in those capacities? You've got the argument, you've got the statement he made, but what actions did he do to force these conveyances? Well, any transaction benefiting a fiduciary is presumed fraudulent and requires a clear and convincing evidence of fairness. And that affidavit by the individual named Crystal that we submitted to the trial court specifically witnessed the amount of pressure and influence that Arthur Rickenau was under. And so I think the trial court assumed without any discovery taking place that Dennis could ultimately overcome that presumption, obtain financing and lawfully exercise his right of first refusal when we never know that was the case. So I hope I answered your question, Your Honor. So those assumptions were improper at the pleading stage, and that's why we're asking this case to be remanded. I'll briefly touch on a few other errors before I turn it over to counsel. While they're not magnifying in nature and completely detrimental to the case, they're still errors throughout the entire trial court's ruling. The dismissal order contained material inaccuracies that we believe affected the trial court's decision. First, the trial court incorrectly stated that my client Brooks was represented by counsel when the option was exercised, and he was not. That is factually inaccurate information, and my client never got to testify to that, and the court offered an opinion that was inaccurate. Second, the court misstated the execution date of the option in a manner that reversed the chronological priority of the documents. I said earlier this case is about timing. The trial court actually got the date completely wrong in its order. These mistakes in the record, how do they help you prevail? What invalidates the court's order because of these perceived errors? Well, I do believe, Your Honor, that these errors were not harmless. I think they go directly to priority and fairness, especially when the case revolves around timing of certain things that happen, including the option to purchase, and then a later first refusal was granted 13 days later. I think these misstatements regarding misrepresentation mattered because the trial court relied on that when assessing its overall position. Obviously, it made a decision at the pleading stage to dismiss the case in its entirety without allowing an ounce of discovery to proceed forward. I do think errors that could be minor in nature ultimately affected the impact and decision of the trial court in this case. The last thing I'll say on the errors is that even after the dismissal and in the court's order, the court did not order return of my client's option right, the option consideration, or removal of the recorded option, basically leaving the option simultaneously invalid and publicly enforceable. It's internally inconsistent with the actual results of the trial court, and so I think the parties are still unsure exactly how this is going to play out because the option is still out there, and it's my client's right, essentially, to still have. In closing, this case does not turn on waiver or technical pleading defects. It turns on whether Illinois law permits a later, vague, unexercised right of first refusal to erase a prior recorded, notarized, exclusive purchase option. We submit to the court that it does not. Our option was first in time, first in right, validly exercised, and ratified by the decedent, Arthur Rakina's will. Later, the right of first refusal was legally deficient, personal in nature, unexercised, and only arose after the option was granted. The timing is very important there. The circuit court's dismissal rests on legal error, factual misstatements, and we believe premature speculation. For those reasons, we respectfully ask that this court reverse and remand the case to the trial court level to allow discovery to proceed. Thank you. Thank you, counsel. Mr. West, you can proceed. Thank you, Your Honor. Good afternoon. If it may please the court, on behalf of the estate and the executor, we respectfully request that this court affirm the circuit court's dismissal of the case as well as the denial of the motion of reconsideration. You know, although there are a number of legal theories and issues presented in the briefing before this court, the vast majority of this case can be resolved by the court applying abusive discretion standard as to the circuit court's ruling and finding that, you know, the majority of the enforceability arguments that counsel just presented to the court, as well as presented on appeal, were waived as they were first brought at the motion to reconsider stage. The only kind of limited issues that would be considered under a de novo standard would be first whether the lease itself terminated upon the passing of the decedent, which Mr. Brooks did not argue or object to that ruling that the court had made in his appeal. And then second, regarding the undue influence, that would be reviewed under de novo standard. On the undue influence, there were two aspects to the trial court's ruling. First, they found that the right of first refusal in and of itself did not constitute a conveyance that would trigger an undue influence analysis or a presumption of fraud. Respectfully, Mr. Brooks did not address that in his brief or in his reply or even today during oral argument. As such, we would respectfully request that this court find that the conveyance aspect of the court's ruling, which if you read the order, that was the first line that it found. And that's never been addressed by Mr. Brooks. And that in and of itself should lead this court to uphold the undue influence finding. And I will address kind of the second component of that as we go. Your Honor, even if it does consider the merits as we've addressed at length in the brief, we also believe that the court should affirm the circuit court's ruling. So first, just to expand briefly on the waiver of the arguments and the abuse of discretion standard. The core arguments on appeal regarding the right of first refusal enforceability are that it was personal in nature, that it was indefinite, the duration, the price, all of those pieces were missing. And then finally, too, that it was never actually exercised. None of those were brought prior to the motion for reconsideration. Respectfully, under Illinois law, motion of reconsideration is to present new evidence, a change in the law, or error in application. None of those are present in Mr. Brooks's case. Illinois law is clear that a litigant cannot stand mute, lose a motion, and then frantically gather new material on a motion for reconsideration. That's exactly what's happened in this case. An abuse of discretion standard that this court must apply to the waiver finding that the court made is that the circuit court was arbitrary in this decision, fanciful, unreasonable, and that no reasonable person could come to the same conclusion. None of those are present. And in fact, Mr. Brooks doesn't even argue that there was an abuse of discretion, or he does so in a limited fashion in his brief. He says that there was an abuse of discretion because the exercise wasn't ripe. As we've noted in the brief, the ripeness argument the circuit court found was likely waived. So to support a finding of an abuse of discretion, Mr. Brooks is relying on a waived argument. So it's a waiver under a waiver, and this court should reject the circular and recursive reasoning in that fashion. There's no argument that there was an abuse and there was no abuse of discretion. This is similar to the case that was cited by our side in the brief. And in that case, the court found that the motion to dismiss stage and the hearing is not a practice round. That if you don't make the arguments, then you can't later bring them at a motion to reconsider. In the Laseka case, they found that the law that was being applied by the parties was settled, and it was only at the motion to stage that the moving party tried to bring new law and statute in the case. That's the exact fact pattern that we have here. At the motion to dismiss stage, Mr. Brooks cited two cases on the enforceability of it, and it was strictly about the enforceability of the lease after the decedent passed. Only upon the motion to reconsider did he bring another four or five cases with this litany of new theories that he's presented. So just as in Laseka, this court should find that there was no abuse of discretion in finding that Mr. Brooks had waived his arguments. Specifically, too, a good portion of his argument in the reply as well as today in the oral argument concerned this, quote-unquote, first-in-time, first-in-right argument. I would submit to the court that Mr. Brooks' prior counsel attorney, Ryan, had referenced that argument in passing at the oral argument for the motion to dismiss. And again, it was cited by Mr. Brooks in his brief. It was a few sentences of argument. That in and of itself is not sufficient to preserve that argument for appeal and not for it to be waivered. Mr. Brooks, the trial court did not rely on that finding or even discuss the first-in-time, first-in-right argument in either of its orders. And as such, it's not a basis to overturn the affirmation or the dismissal that the trial court had entered. Further, Mr. Brooks, if he's arguing that, well, I brought it up during oral argument, and therefore it's not waived, he brought it up briefly at the motion to dismiss argument. If he believed it was so vital to his case, he could have argued it again in the motion to dismiss, I'm sorry, the motion for reconsideration, but failed to do so. So as such, this court would be well within its rights to find that that argument as well was waived because it was not adequately briefed in writing, and the parties did not have an adequate opportunity to actually argue that prior to the appeal. In terms of the merits, we also believe that this court should affirm the circuit court's ruling. The lease itself is valid. It automatically extends year over year. And there's been no argument that the, aside from the failed original argument that the death of the decedent terminated the lease, there's been no argument or no fact pattern that exists out there to find that the lease is not still in effect. The duration of the right of first refusal, which was a term of the lease, is also not at issue because the lease itself is in existence. This is unlike the counter case that has been cited because in that case, there was an installment purchase agreement that had been completed and fully performed for many years. And then years later, the party to that agreement, which again was fully performed, comes back and tries to enforce a right of first refusal. And the court says the right of first refusal doesn't have any duration, and therefore it's unenforceable. Those facts do not line up with this case at all because the right of first refusal exists in an active lease between the landlord and the tenant, the landlord being the estate and the tenant being Mr. Rickenau in his individual capacity. And just to clarify for the record, I don't think Mr. Guilfoyle intended this, but I represent Mr. Rickenau in his fiduciary capacity and not as the farmer. As to the definiteness of the price terms, etc., there's no dispute as to what the price is in this case. The price is what the option is. The parties as to the right of first refusal, there is an understanding between the estate and Mr. Rickenau in his individual capacity. So some of the issues that existed in the universal scrap or the fulsome or those cases, those aren't present here because there is no dispute and it is a very workable thing. The option price is stated and it could proceed under that price. Respectfully, we believe that these arguments are largely driven just to inject ambiguity or try to create a factual issue that isn't there. The circuit court was well within its rights to find as a legal matter that the right of first refusal was valid, that the terms were definite, and that it was able to proceed. And further, in terms of those other cases, the right of first refusal that was being objected to in the cases cited were between the parties to the original right of first refusal. Mr. Brooks, on the other hand, is trying to interject himself into the right of first refusal to which he's not a party and this court should not allow him to do so based on case and arguments cited in our brief. Regarding the actual first-in-time argument, which again we strongly urge this court to find should be waived, respectfully, if this court does affirm the case, which we believe it should, it would not be the broad ranging ruling that Mr. Guilfoyle has argued. In fact, it would be based on a ruling that the death of a landlord doesn't terminate a lease. They're not even arguing that that's not true. And then the undue influence, which is a highly specific factual, which we'll discuss here in a moment, but that would have no broad implications whatsoever. So respectfully, for the court to affirm the case, there is no need other than a narrow abuse of discretion and review standard for the justification for what the court would do. But beyond that, I would posit that Mr. Guilfoyle and Mr. Brooks are arguing for the broad new law if we were to find that any time an option agreement is agreed to, that it effectively permanently freezes the optioner's right as to managing and leasing its property. Because if we were to say that Mr. Rickenauld was unable to enter into a lease because he had an option, that is a broad finding, and that is a finding that is unsupported by Illinois law. Mr. Brooks did not cite one case to support such a broad ruling to hinge their case on the first in time, first in right. There's no case law whatsoever cited to support that position. So for that, Your Honor, we do not think that a finding that a right of first refusal under a valid lease would lead to broad-ranging, you know, affecting all future contracting in Illinois. And in fact, we believe the opposite is true in that a broad-ranging anti-alienation or anti-contracting law that would apply to any person who signed an option we think is untenable. Finally, in regards to the undue influence aspect of this case, again, the conveyance was not addressed, and we do think that there was no conveyance as the trial court had found. The right to first refusal holder cannot force a sale, and so he has no right to make Mr. Rickenaugh the decedent sell the farmland. Second, even if he exercised a right of first refusal, Mr. Rickenaugh is going to receive the same amount of money regardless, or as a state would, and so therefore there's no harm to it. And that's in line with what the trial court had found. The trial court had found that there was no law cited to support that a right of first refusal would trigger a conveyance for undue influence. And again, Mr. Brooks is again asking that this court expand Illinois law to a position that has not been considered and is not supported. Regarding the factual dispute, I would submit to this court that in reviewing the orders that the trial court had entered into, the trial court went through great lengths and pains to identify all of the facts that it assumed were true for purposes of finding that even if the conveyance aspect, which they can't get over that hurdle, but even if they did, there's no set of facts that would support undue influence in this case. Specifically as to Ms. Cassidy, the affidavit, the court said that it was assuming as true that the option agreement was created to avoid a violent confrontational argument. So the court considered and accepted as true that there was a violent argument, which is what Ms. Cassidy had testified to. First and foremost, Your Honor, we strongly disagree that a loving nephew who's farmed land for 20 years had anything other than an appropriate relationship with his uncle. We strongly disagree with that. But we understand that the court accepted that as true and wrote it in its order. So for Mr. Brooks to say that the court didn't consider all these allegations that he made is factually inaccurate. And we respectfully request that the court review the order that trial court had and find that he did consider it. The other thing that Mr. Brooks, during the course of the litigation, he had answered affirmative defenses that the estate had filed and effectively admitted that the decedent was fully competent, had no physical disabilities, was sophisticated in financial transactions, etc. So on the one hand, Mr. Brooks has already admitted that Mr. Rickenau was tippy top, knew what he was doing. Five or six days before the release was exercised, he was, you know, the example of health and vitality as an old man. And then once the court to then find that there was an undue influence four or five days later, six days later, based on, you know, an argument that, well, his nephew was totally taken advantage of him. We would respectfully request, again, the court had considered this. The court had considered all of the allegations he had made. No amount of additional discovery and the salacious allegations are going to turn that around because even accepting those as true, no undue influence could be present. So for that, your honors, we would respectfully again request really just a ruling that no abuse of discretion was present. And that really resolves the vast majority of this case. And then as to the undue influence, which again is a fairly narrow issue, we believe that the trial court was well within its rights to consider it as a legal matter that no undue influence was possible. Thank you, your honors. Thank you. Any rebuttal? Yes, thank you, your honor. I want to touch on a few of the issues that were just argued by Mr. West and that starts with the undue influence. And I would say this is that undue influence under Illinois law requires proof of a fiduciary relationship, substitution of the influencer's will for the decedent's mindset and participation in procuring the transaction, all these types of things. And in this case, none of that was found because none of it was tested. None of it was ever cross-examined because discovery was not allowed. So the estate's argument collapses the undue influence analysis into ultimate merits, something improper at the power of attorney for Arthur. That's undisputed. That created a fiduciary relationship as a matter of law. When a fiduciary inserts himself into a transaction that benefits him, red flags, directly or indirectly, a presumption of undue influence arises. The estate argues the right of first refusal is not a conveyance, but Illinois courts do not limit fiduciary scrutiny to deeds alone. Any transaction that restrains alienation or alters disposition of property can trigger a so more importantly, the trial court assumed Dennis could rebut the presumption without discovery, testimony or evidence. And that is not permitted on a motion to dismiss. You know, whether Dennis benefited, whether Arthur was pressured and whether or not the right of first refusal was used to obstruct a known option are fact questions. And we never had our chance to address that. That cannot be resolved as a matter of law. Let me briefly touch upon the issue and the nature of the arguments raised in this case. First, this case was dismissed at the pleading stage on the motion to dismiss. At that stage, the court is required to consider whether the pleadings taken as true can support any and italicize any set of facts entitling the plaintiff to relief. Pure questions of law, including whether the right of first refusal is personal, indefinite or subordinate to a prior option are not forfeited merely because they were not exhaustively briefed in an initial response. And again, to the waiver argument is that counsel and the estate spent great effort and repetition persuading you to believe that the appellant weighed essentially every argument of his case. But at no time did I feel they address the important facts that are not in their favor. And they're bold in front of us. Their argument weighs heavily on the Kellner case, which we believe actually does help us. While the facts are not identical, a purchase option can force the sale of a property. They instead argue that the execution of the purchase option merely forces the property to be for sale and thus allows them to exercise a right of first refusal. The right which we have previously pointed out was neither first nor containing a right as it was granted one after the fact and two does not explicitly apply to the entirety of the parcels clearly contained in the purchase option, which my client has. So we do not believe any waiver was ever made at the trial court level because again, I was not involved in the trial court. But I can say this is that counsel at that time felt that the first in time first and right was apparent by the timeline and text of the purchase option, which was already in the case record. The arguments were raised in the moral motion to dismiss oral arguments, including the obvious fact that my client Mr. Brooks contract was first in time first and right. And so I think any argument that the waiver should this court should not consider last about the waiver. That's discretionary. It's not automatic. We are asking the court under Illinois appellate court case law that the abuse of discretion standard does not insulate a ruling that misapplies controlling law. And I feel that Kellner would essentially be disregarded if this is the case where the court affirms a trial court's decision. Further, where the dismissal rests on an incorrect legal premises here that a later right of first refusal can extinguish a prior option. This court may review the issue not withstanding the waiver. I'm welcome and open to any other questions the court may have. We respectfully ask this case be remanded and reversed and sent back to the trial court level. Thank you. All right. Thank you, counselors. The court will take this matter under advisement and will stand in recess.